**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| Karen Louise K.,[1] | Case No. 2:25-cv-01126-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| Frank Bisignano, | |
| Defendant. | |

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff's application for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff filed an opening brief asking the Court to reverse and award benefits, or in the alternative, remand the case for further proceedings. ECF No. 11. The Commissioner opposed and Plaintiff replied. ECF Nos. 13 and 14. For the reasons discussed below, the Court reverses and remands the case for further proceedings.

**I.      BACKGROUND**

On September 10, 2021, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act as well as supplemental security income under Title XVI, alleging an onset date of September 3,2021. Administrative Record ("AR") 4612. Plaintiff's claim was denied initially and upon reconsideration. *Id.*

A telephonic hearing was held before Administrative Law Judge ("ALJ") Jeffrey Mastin on May 21, 2024. *Id.* On May 31, 2024, ALJ Mastin found that Plaintiff was not disabled. *Id.* at 191. AR 4613. It should be noted that Plaintiff received a prior unfavorable decision on September 1, 2021, which ALJ Mastin considered in the context of *Chavez* and Acquiescence Ruling 97-4(9). AR 4612. Plaintiff appealed that decision to the Appeals Council, which denied her request for review. AR 211, 1–6. Plaintiff then commenced this action for judicial review

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

under 42 U.S.C. § 405(g) on September 22, 2025. *See* ECF No. 1.

**II.       STANDARD OF REVIEW**

Administrative decisions in Social Security disability-benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action. . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commisioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F. 3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the

2

Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, the issue before the Court is not whether the Commissioner could have reasonably reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### A. Disability evaluation process and the ALJ decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual also must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the

ALJ will make a finding of non-disability. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy

4

within the last 15 years. The work also must have lasted long enough for the individual to learn the job and to have performed an SGA. If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then the ALJ makes a finding of non-disability. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

*Here*, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 3, 2021, the alleged onset date. AR 4615.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: post-traumatic stress disorder, bipolar disorder, anxiety disorder, adjustment disorder, left shoulder impingement, and lumbago. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Before moving to step four, the ALJ concluded that Plaintiff had the RFC to perform light work but with the following limitations:

> The claimant can occasionally reach overhead with the left upper extremity and can perform unlimited reaching in other planes; she has no reaching restriction with the right upper extremity. The claimant can work in an environment with noise of a moderate level. She can understand, remember, and carry out simple instructions and make simple work-related decisions to perform routine work. The claimant can perform routine tasks at a consistent pace, but not a production rate pace where each task must be completed within a strict time deadline. She can tolerate occasional interaction with coworkers and

supervisors and no interaction with the public. The claimant can tolerate occasional changes in a routine work setting. She can tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, sharing of job tasks, or interaction with the public.

AR 4617.

At step four, the ALJ found that Plaintiff was unable to perform any PRW. AR 4622.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in the national economy that Plaintiff could perform, namely as an inspector/packer, a sorter, and a mail clerk. AR 4623–24. The ALJ then concluded that Plaintiff has not been under a disability from September 3, 2021, to the date of the decision. AR 4624.

## III.    ANALYSIS

### A.  The ALJ's finding at step five is *not* supported by substantial evidence.

As noted above, the ALJ found that Plaintiff has the RFC to perform light work with additional limitations, including that she "can perform routine tasks at a consistent pace, but not a production rate pace where each task must be completed within a strict deadline" and that she can tolerate a "low level of work pressure, defined as work not requiring . . . a production rate pace." AR 4617. The vocational expert testified that that Plaintiff would be able to perform the requirements of occupations such as inspector/packer (DOT 559.687-074, SVP of 2, light, 6,000 jobs), sorter (DOT 222.687-022, SVP of 2, light, 115,000 jobs), and mail clerk (DOT 209.687-026, SVP of 2, light, 13,000 jobs). AR 4624. At the hearing, the ALJ and vocational expert went back and forth regarding the production-rate limitation and available jobs. After the vocational expert testified that Plaintiff could not perform her past job, the ALJ asked whether other jobs were available:

> VE: "I think when I put it all together I think I should say, no."
> ALJ: "Okay. I mean, are there reasons that lead to that conclusion?"
> VE: "It's the production. Yeah. You know what, it's the productivity, the maintaining an ongoing production rate."

AR 34–35.

6

The ALJ clarified that what he intended by the production-rate limitation was no "Lucille Ball standing at the conveyor" with chocolates. AR 35. The vocational expert responded that she "could say [] those jobs as long as it's not incredibly fast-paced work." *Id.* The ALJ then questioned the sorter job, saying "[i]t just sounds like Lucille Ball." AR 36. The vocational expert responded that "[i]t's not a conveyor – I think of production rate, I think of the conveyorr – the machine controlling the person as opposed to the person controlling whatever." *Id.* Again, the ALJ questioned the sorter job, stating "I see a sorter, you know, I see a bunch of stuff coming down a conveyor at someone, and you're throwing something in one bin and something in another." *Id.* The vocational expert responded "No. Yeah. No." *Id.*

Finally, the ALJ asked: "Is there anything in your testimony that would be inconsistent or conflict with the DOT?" *Id.* The vocational expert stated: "No . . . They don't deal with things like production rate, that sort of stuff." *Id.* The ALJ confirmed:

> ALJ: "But just to clarify, the DOT's silent on that, so there's no conflict."
> VE: "Yes."
> ALJ: "It just doesn't address it, correct?"
> VE: "Right. Exactly. Exactly."

AR 37.

In the ALJ's decision, he found that the vocational expert's testimony was consistent with the information contained in the DOT. *Id.* "At the hearing, the vocational expert acknowledged that the DOT does not address things such as specific directions of reaching or a production rate pace. She stated that she relied on her education, training, and experience when addressing those matters." *Id.*

Plaintiff argues that the DOT's definition of sorter describes that job as potentially involving sorting on a conveyor belt. ECF No. 11 at 7. Plaintiff argues that the vocational expert's statement that there was no conflict with the DOT because it is silent on production rate was improper and unsupported under SSR 00-4p. *Id.* at 8. The Commissioner responded that the DOT is not explicit that working from a conveyor belt is a required function of the sorter job, and the vocational expert acknowledged this and stated that she was relying on her education,

training, and experience. ECF No. 13 at 5. The Commissioner argues that the vocational expert's testimony amounted to substantial evidence to support the ALJ's finding. *Id.* Plaintiff replied that the vocational expert did not put forth persuasive evidence to support her deviation from the DOT description because the expert did not even acknowledge the discrepancy between her testimony and the DOT. ECF No. 14 at 2.

An ALJ may rely on a vocational expert to provide testimony about jobs a claimant can perform despite his or her limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). If vocational expert testimony conflicts with the requirements listed in the DOT, then the ALJ must ask the vocational expert to reconcile the conflict. SSR 00-4p. An ALJ is only required to reconcile an "apparent" or "obvious" conflict. *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). Moreover, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)

Several district courts have found that the sorter job presents an apparent conflict with RFCs that preclude production-based work. *Shanta R.B. v. O'Malley*, No. 2:22-cv-07969-JC, 2024 WL 661187, at *8 (C.D. Cal. Jan. 3, 2024); *see also Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591, at *4 (C.D. Cal. Aug. 6, 2019) (finding that the package sorter job's "alternative designation as a 'conveyor belt package sorter' conflicts with [plaintiff's] limitation to work with 'no fast paced production or assembly line type work'"); *see also Abigail L. v. Kijakazi*, No. 21-2275 (FLW), 2022 WL 16362468, at *13 (D.N.J. Oct. 27, 2022) (finding that package sorter job conflicts with restriction from tandem work on an assembly line, due to DOT's reference to conveyor belt work); *see also Laura K. v. Kijakazi*, No. TMD 20-2215, 2021 WL 4391123, at *6 (D. Md. Sept. 24, 2021) ("Th[e] task of looking at items on a conveyor belt and removing specific items conflicts with an RFC precluding fast paced, assembly line work.") (internal quotations and citation omitted).

This Court agrees with the above district courts that the sorter job conflicts with Plaintiff's limitation regarding a production-rate pace given the description that the sorter job

"[m]ay be designated according to work station as Conveyor Belt Package Sorter." DOT 222.687-022 (Routing Clerk). This Court further finds that no persuasive evidence in the record supports this deviation, such that the ALJ could not rely on the vocational expert's testimony. As discussed above, the vocational expert did not acknowledge the deviation between her testimony and the DOT—even when pressed by the ALJ. The vocational expert opined that there was no conflict between her testimony and the DOT. AR 37. Thus, the vocational expert offered no explanation as to this deviation. Accordingly, the finding at step five was not supported by substantial evidence.

### B.  Harmless Error and Remand

Plaintiff argues that the ALJ's error was not harmless because the remaining jobs the vocational expert identified—inspector/packer (DOT 559.687-074) and mail clerk (DOT 209.687-026)—do not exist in "significant" numbers as they only amount to 19,000 positions nationally. ECF No. 11 at 8. The Commissioner did not address this argument. *See* ECF No. 13. Plaintiff asks for reversal and an immediate award of benefits, or in the alternative, remand. ECF No. 11 at 9; ECF No. 14 at 3. She does not provide specific arguments as to these requests.

Even if an ALJ errs, courts should uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.* (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)). Relevant here, the Commissioner is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's] residual functional capacity and vocational factors" to support a finding that a claimant is not disabled at step five. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

The Ninth Circuit has found that 25,000 jobs nationally was ultimately significant but a "close call." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). In an unpublished opinion, the Ninth Circuit considered whether 18,500 jobs nationally and 195 regionally were significant. *Little v. Berryhill*, 690 F. App'x 915, 917 (9th Cir. 2017). It found

that the 195 jobs regionally was not significant, though it did not explicitly state that 18,500 jobs nationally was also not significant. *Id.* However, it did note that "[t]his court has held that whether 25,000 jobs nationally is significant is a close call." *Id.* (citing *Gutierrez*, 740 F.3d at 529) (internal quotations omitted). District courts in this jurisdiction have reached inconsistent conclusions as to whether 19,000 jobs nationally is a significant number. *See Vasni L. v. O'Malley*, No. 5:23-cv-01970-AJR, 2024 U.S. Dist. LEXIS 131762, at *15 (C.D. Cal. July 25, 2024) (collecting cases).

Social security cases should be remanded if additional proceedings can remedy defects in the underlying administrative proceeding. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981). However, courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with *or without* remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added). "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Courts considering the issue of whether 19,000 jobs nationally is significant have remanded for further development of the record because the question of whether a significant number of jobs exist is a question of fact for the ALJ. *See Vasni L.*, 2024 U.S. Dist. LEXIS 131762, at *15–16.

Here, it is unclear whether 19,000 jobs nationally is significant, and additional proceedings can remedy this defect. Accordingly, this Court remands the case for further proceedings at step five for the ALJ to determine whether work exists in significant numbers in the national economy that Plaintiff can do given her RFC and vocational factors.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is remanded for further proceedings consistent with the above decision.

/ /

/ /

10

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.


DATED: June 12, 2026


_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

11